# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 8643 | DATE | 12/5/2003 |
| CASE TITLE | HEGNA, et al. vs. ISLAMIC REPUBLIC OF IRAN, et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

1) ☐ Filed motion of [ use listing in "Motion" box above.]
2) ☐ Brief in support of motion due _____.
3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
4) ☐ Ruling/Hearing on _____ set for _____ at _____.
5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
7) ☐ Trial[set for/re-set for] on _____ at _____.
8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

10) ■ [Other docket entry] The stay is lifted based on plaintiffs' amended complaint in *Hegna v. Snow*, No. 03-1479 (D.D.C.). The United States' objections to the magistrate judge's report and recommendation [35-1] are sustained in part. The United States' motion to quash the writs of attachment [19-1] is granted. Plaintiffs' motion for a turnover over [18-1] is denied. Plaintiffs' objection to the magistrate judge's report and recommendation [33-1] is moot. ENTER MEMORANDUM OPINION AND ORDER.

11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | DEC 0 8 2003 date docketed |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials |
| ✓ | Copy to Magistrate Judge Denlow. | | 12/5/2003 |
| CB courtroom deputy's initials | | 03 DEC -5 PM 2:18 Date/time received in central Clerk's Office | date mailed notice PW mailing deputy initials |

Document Number 53

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EDWENA R. HEGNA, et al., )
)
        Plaintiffs, ) No. 02 C 8643
)
v. ) Suzanne B. Conlon, Judge
)
ISLAMIC REPUBLIC OF IRAN, et al., )
)
        Defendants. )

DEC 0 3 2003

## MEMORANDUM OPINION AND ORDER

Edwena A. Hegna, Craig Hegna, Steven Hegna, Lynn Marie Hegna Moore and Paul Hegna ("plaintiffs") are family members of Charles Hegna, who was killed in a terrorist hijacking in 1984. They seek to enforce a default judgment for $375,000,000 ($42,000,000 in compensatory damages and $333,000,000 in punitive damages) entered against the Islamic Republic of Iran and the Iranian Ministry of Information and Security (collectively, "Iran") in the United States District Court for the District of Columbia, in connection with his death. On January 21, 2003, this court granted plaintiffs' motion for writs of attachment on two condominium units commonly known as Units 3511 and 3512, 155 N. Harbor Drive, Chicago, Illinois. The court then referred plaintiffs' citation to discover assets to a magistrate judge pursuant to 28 U.S.C. § 636(b)(3).

After the writs were served, plaintiffs moved for a turnover order for the condominiums. The United States intervened pursuant to 28 U.S.C. § 517 and moved to quash the writs of attachment. The magistrate judge recommended that the United States' motion to quash the writs of attachment be denied and plaintiffs' motion for a turnover order be granted. The magistrate judge further recommended that the turnover order be stayed pending final resolution of *Hegna v. Snow*, No. 03-

1



1479 (D.D.C.). Plaintiffs and the United States filed timely objections to the magistrate judge's recommendations pursuant to Fed. R. Civ. P. 72. Iran has not appeared in this or the underlying case.

## BACKGROUND

On December 4, 1984, Charles Hegna was on board a Kuwaiti Airlines aircraft bound for Pakistan when it was hijacked by members of Hezbollah, a terrorist organization sponsored by Iran. The hijackers forced the pilot to land at Iran's Tehran Airport. Shortly thereafter, the hijackers fatally shot Hegna and threw his body out onto the tarmac. Plaintiffs ultimately obtained a default judgment against Iran related to Hegna's death.

Plaintiffs thereafter filed applications for payment on their default judgment pursuant to the Victims of Trafficking and Violence Protection Act of 2000 ("VPA"), Pub. L. No. 106-386, § 2002, 114 Stat. 1464 (2000), as amended by Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297, 116 Stat 2337 (2002). Under the VPA, covered individuals must relinquish their right to punitive damage awards as well as their right "to execute against or attach property" after receiving payment for their compensatory damages awards under certain circumstances. *Id.* at §§ 2002(a)(2)(B)-(D). On July 7, 2003, plaintiffs filed an action in the United States District Court for the District of Columbia, seeking a declaratory judgment regarding their right to enforce their judgment against Iran after accepting payment under the VPA. On September 23, 2003, this court found comity justified the stay of plaintiffs' enforcement action pending resolution of *Snow*. Shortly thereafter, plaintiffs amended their complaint in *Snow* to eliminate their declaratory judgment action under the VPA. Based on plaintiffs' amendment, both plaintiffs and the United States agree it is appropriate to proceed to the merits of this case. *See* plaintiffs' status report at 2 ("Under the currently operative

2

pleadings, the preclusive effect if any, the Hegna's [sic] acceptance of certain payments from the United States has upon their ability to execute against the Chicago real estate which is the subject matter of this action is no longer at issue"). *See also* United States' status report at 2 ("[i]t is the United States' view that plaintiffs' amendment of the complaint in *Hegna v. Snow* has eliminated any need for a stay of these proceedings"). Accordingly, the stay is lifted and the objections to the magistrate judge's report and recommendation are ripe for decision.

## DISCUSSION

### I. Legal Standard

In reviewing a magistrate judge's report and recommendation, the district court must "make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made." Fed. R. Civ. P. 72(b). The district court may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions. *Id.*

### II. Objections

The United States, as an intervenor, asserts that plaintiffs can no longer enforce their judgment after accepting payment under the VPA. It is undisputed that the United States did not present this argument until it filed its supplemental memorandum one day *after* the magistrate judge issued his report and recommendation. Generally, arguments not made before a magistrate judge are waived:

> It is also true that we have said that waiver is a flexible doctrine, but there are good reasons for the rule that district courts should not consider arguments not raised initially before the magistrate judge, even though their review in cases governed by 28 U.S.C. § 636(b)(1) is *de novo*. Failure to raise arguments will often mean that facts relevant to their resolution will not have been developed; one of the parties may

3

be prejudiced by the untimely introduction of an argument (which [the defendant] argues is the case here). Additionally, a willingness to consider new arguments at the district court level would undercut the rule that the findings in a magistrate judge's report and recommendation are taken as established unless the party files objections to them.

*United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000)(internal citations omitted). Plaintiffs do not argue either consideration is implicated by the United States' tardy presentation of additional evidence. Indeed, neither consideration is implicated here.

Plaintiffs accepted partial payment under the VPA on July 30, 2003. Eight business days later, the United States filed its supplemental memorandum before the magistrate judge. Thereafter, plaintiffs responded. In addition, plaintiffs supplemented their arguments in response to the United States' objections to the magistrate judge's report and recommendation. As a result, plaintiffs have had ample opportunity to address the United States' preclusion argument. Moreover, the magistrate judge specifically stayed the turnover because the "[p]laintiffs in this case may be precluded from attaching the condominiums this Court believes they are entitled to depending upon the final outcome of [*Snow*]." Report and Recommendation at 24. In objecting to the magistrate judge's determination regarding the stay, plaintiffs argued that any purported relinquishment of their right to enforce their judgment was not supported by adequate consideration. Therefore, the United States' preclusion argument is properly before this court. *See* Fed. R. Civ. P. 72(b) (allowing district court to receive and consider additional evidence).

The VPA provides in relevant part:

in the case of payment under paragraph (1)(B), [a covered individual] relinquishes all rights to execute against or attach property that is at issue in claims against the United States before an international tribunal, that is the subject of awards rendered by such tribunal, or that is subject to section 1610(f)(1)(A) of title 28, United States Code.

4

VPA at § 2002(a)(2)(D). According to the United States, the condominiums are the subject of claims brought by Iran against the United States before the Iran-U.S. Claims Tribunal in The Hague, The Netherlands. Supp. Memo., Ex. C at ¶¶ 23-24, 37. The Iran-U.S. Claims Tribunal was established by the Algiers Accords to hear claims between the two governments, as well as claims of U.S. nationals against Iran, as part of the ultimate resolution of the hostage crisis in Iran. *Id.* at ¶ 37.

In response, plaintiffs assert that the condominiums are not tribunal property because the Iran-U.S. Claims Tribunal does not have jurisdiction over their claims. Plaintiffs' argument misses the point. Under the VPA, the status of the property subject to execution, not the underlying claim, determines whether relinquishment is appropriate. Plaintiffs do not refute the United States' evidence that the condominiums are subject to claims currently pending before the Iran-U.S. Claims Tribunal. Rather, plaintiffs' response shows that Iran has brought a claim against the United States before the Iran-U.S. Claims Tribunal, alleging that the United States is obligated under the Algiers Accords to return its diplomatic and consular property.[1] *See* Pl. Resp. to Supp. Memo at Ex. A. Therefore, the evidence conclusively establishes that the condominiums are subject to claims brought by Iran against the United States before an international tribunal for purposes of the VPA.

Plaintiffs next assert relinquishment is not supported by adequate consideration because they have not yet received full payment. Plaintiffs fail to cite any authority for their position. To the contrary, the relinquishment provision of § 2002(a)(2)(D) regarding assets before an international

---

[1] Plaintiffs' assertion that the Iran-U.S. Claims Tribunal found that the United States may compensate Iran for any breach caused by the United States' failure to preserve the property lacks merit. The Tribunal merely found that injunctive relief was unavailable where the United States could compensate Iran for any breach resulting from the United States' *rental* of the property. *Id.*

tribunal applies to "[a]ny person receiving less than the full amount of compensatory damages awarded to that party in a judgment to which this subsection applies." TRIA at § 201(d)(5). *See also* Pl. Resp. to Supp. Memo. at 21 (TRIA "provided that even if a judgment creditor's claim was not paid 100%, the judgment creditor would be required to relinquish the right to attach Iranian property at issue before an international tribunal"). Plaintiffs specifically acknowledged in writing that their relinquishment was effective upon "*any* pro rata distribution." Ex. D. to Supp. Memo. at Ex. D (emphasis supplied). In any event, the United States offers evidence that plaintiffs have since received full payment under the VPA. *See* Opposition filed on December 3, 2003 at Ex. A. Accordingly, plaintiffs' argument lacks merit.

Plaintiffs claim they perfected their right to the condominiums before any purported relinquishment. Plaintiffs' attachment on the condominiums grants them a lien that may have priority over other liens under Illinois law. *See* 810 ILCS 5/9-301(3)("A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like"). However, "[a] citation lien remains subject to attack and modification until a turnover order is issued. It is the turnover order which makes the lien irrevocable." *100 W. Monroe Partnership v. Carlson*, 319 Ill. App. 3d 761, 769, 745 N.E.2d 554, 560-61 (1st Dist. 2001). Plaintiffs' relinquishment of their right to execution prevents them from obtaining the required turnover order.

Finally, plaintiffs challenge the United States' interference with the enforcement of their judgment based on the separation of powers doctrine and equal protection grounds. Plaintiffs fail to offer any authority demonstrating that the government's enforcement of their voluntary relinquishment constitutes a separation of powers violation. Nothing in the VPA, as amended by TRIA, prevents this court from accomplishing its constitutionally assigned function of adjudicating

valid judgments. *United States v. Sioux Nation*, 448 U.S. 371, 391 (1980). Nor do plaintiffs establish an equal protection violation by showing they were (1) "intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment" or (2) "that the government is treating unequally those individuals who are *prima facie* identical in all relevant respects, and that the cause of the differential treatment is a 'totally illegitimate animus toward the plaintiff by the defendant." *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001)(citations omitted). Plaintiffs fail to identify any victim allowed to execute against Iranian property after accepting payment under the VPA. Therefore, plaintiffs' constitutional challenges fail on the merits.

## CONCLUSION

Plaintiffs relinquished their right to execute against the Iranian condominiums located in Chicago by electing payment under the VPA, as amended by TRIA. Accordingly, the parties' remaining objections to the magistrate judge's report and recommendation are moot.

December 5, 2003               ENTER:

                               Suzanne B. Conlon
                               United States District Judge

7